**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**BECKLEY DIVISION**

| | | |
|---|---|---|
| **DOUGLAS HAGER, on behalf of** | ) | |
| **the ESTATE OF** | ) | |
| **ADAM LEE SURATT** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.  5:24-cv-00258** |
| | ) | |
| **BETSY JIVIDEN, individually as a** | ) | |
| **Former Employee of the West Virginia** | ) | |
| **Division of Corrections and** | ) | |
| **Rehabilitation;** | ) | |
| **MICHAEL FRANCIS, individually as a** | ) | |
| **Former Employee of the West Virginia** | ) | |
| **Division of Corrections and** | ) | |
| **Rehabilitation;** | ) | |
| **TIFFANY FORD, individually as an** | ) | |
| **employee of the West Virginia Division** | ) | |
| **of Corrections and Rehabilitation;** | ) | |
| **NATHAN PACK, individually as an** | ) | |
| **employee of the West Virginia Division** | ) | |
| **of Corrections and Rehabilitation;** | ) | |
| **NATHANIEL REICHARD, individually** | ) | |
| **as an employee of the West Virginia** | ) | |
| **Division of Corrections and** | ) | |
| **Rehabilitation;** | ) | |
| **CHRISTOPHER WALKER, individually** | ) | |
| **as an employee of the West Virginia** | ) | |
| **Division of Corrections and** | ) | |
| **Rehabilitation;** | ) | |
| **PRIMECARE MEDICAL, INC.;** | ) | |
| **PRIMECARE MEDICAL OF WEST** | ) | |
| **VIRGINIA, INC; and** | ) | |
| **JOHN/JANE DOE WVDCR** | ) | |
| **EMPLOYEES.** | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**COMPLAINT**

1

**COMES NOW**, Plaintiff Douglas Hager, on behalf of the Estate of Adam Lee Suratt, by the undersigned counsel, and for his Complaint states and alleges as follows based upon personal knowledge and/or information and belief:

## I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and under its authority to decide pendent state law claims pursuant to 28 U.S.C. § 1367.

2.      Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983, 1988 and West Virginia state law.

3.      Venue is proper because some Defendants can be served with process within the Southern District of West Virginia, Beckley Division, and because the incidents giving rise to this Complaint occurred within the Southern District of West Virginia, Beckley Division.

## II.      PARTIES

4.      Plaintiff Douglas Hager (hereinafter "Plaintiff") was at all times relevant hereto a resident of Raleigh County, West Virginia.

5.      Plaintiff was duly appointed as the Administrator of the Estate of Adam Lee Suratt on March 30, 2023, by the Fiduciary Supervisor of Raleigh County, West Virginia.

6.      Defendant Betsy Jividen (hereinafter "Former Commissioner Jividen") was an employee of the WVDOCR from January 8, 2018, until she was forced to resign on August 5, 2022, and was at all times relevant hereto acting within the scope of her employment and under color of law as the Commissioner of the WVDOCR.

7.      The West Virginia Division of Corrections and Rehabilitation (hereinafter, the "WVDCR") is a state agency under the authority and control of the West Virginia Department of

Homeland Security (hereinafter, the "WVDHS"). The WVDCR operates, manages, and controls all state correctional facilities in West Virginia, including Southern Regional Jail in Beaver, Raliegh County, West Virginia (hereinafter "SRJ").

8.      As Former Commissioner of the WVDOCR, Former Commissioner Jividen was vested with executive authority and responsibility for the administration, operation, and control of all WVDOCR facilities and employees of WVDOCR facilities. Commissioner Jividen's duties included establishing, monitoring, and enforcing policy directives and procedures that ensure constitutional confinement and treatment of all individuals in the custody of the WVDOCR. See W. Va. Code § 15A-3-4; W. Va. Code § 15A-3-12.

9.      Among other things, Former Commissioner Jividen was charged with ensuring that inmates housed in any West Virginia jail were not given access to nor had the ability to obtain contraband inside SRJ.

10.     Former Commissioner Jividen, who upon information and belief resides in Ohio County, West Virginia, is sued for damages in her individual capacity.

11.     Defendant Michael Francis (hereinafter "Former Superintendent Francis") was at all times relevant hereto an employee of the WVDOCR and was at all times relevant hereto acting within the scope of his employment and under color of law as the administrator of SRJ.

12.     Former Superintendent Francis was tasked by law with the care and custody of all detainees and prisoners incarcerated at SRJ. Former Superintendent Francis was vested with authority and responsibility for the safe staffing, administration, operation, and control of SRJ, including, but not limited to, the oversight of all SRJ employees, and the authority to promulgate, amend, and implement all policies and procedures within SRJ to ensure constitutional confinement and treatment of all individuals incarcerated therein. See W. Va. Code § 15A-3-5.

13.     Among other things, Former Superintendent Francis was charged with ensuring that inmates housed in SRJ were not given access to nor had the ability to obtain contraband inside West Virginia's correctional facilities.

14.     Former Superintendent Francis, who upon information and belief resides in Monroe County, West Virginia, is sued only in his individual capacity.

15.     According to W. Va. Code § 15A-3-1, the purpose of the WVDCR is to "establish a just, humane, and efficient corrections program" in West Virginia (emphasis added).

16.     Based upon information and belief, approximately eleven (11) SRJ inmates died between January 1, 2021 and the date of Adam Suratt's death.

17.     According to the Bureau of Justice Statistics, in 2019, there were 1,200 deaths in local jails nationwide, an average of twenty-four (24) per state.[1]

18.     Defendant Tiffany Ford, who was a sergeant (hereinafter "Sgt. Ford"), was at all times relevant hereto an employee of the WVDCR and was at all times relevant hereto acting within the scope of her employment and under color of law as a correctional officer at SRJ.

19.     Sgt. Ford, who upon information and belief resides in Mercer County, West Virginia, is sued only in her individual capacity.

20.     Defendant Nathan Pack, who was a corporal (hereinafter "Cpl. Pack"), was at all times relevant hereto an employee of the WVDCR and was at all times relevant hereto acting within the scope of his employment and under color of law as a correctional officer at SRJ.

21.     Cpl. Pack, who upon information and belief resides in Summers County, West Virginia, is sued only in his individual capacity.

---

[1] bjs.ojp.gov/library/publications/mortality-local-jails-2000-2019-statistical-tables (accessed December 19, 2023).

22.     Defendant Christopher Walker, who was a correctional officer (hereinafter "CO. Walker"), was at all times relevant hereto an employee of the WVDCR and was at all times relevant hereto acting within the scope of his employment and under color of law as a correctional officer at SRJ.

23.     CO Walker, who upon information and belief resides in Raleigh County, West Virginia, is sued only in his individual capacity.

24.     Defendant Nathaniel Reichard, who was a correctional officer (hereinafter "CO Reichard"), was at all times relevant hereto an employee of the WVDCR and was at all times relevant hereto acting within the scope of his employment and under color of law as a correctional officer at SRJ.

25.     CO Reichard, who upon information and belief resides in Raleigh County, West Virginia, is sued only in his individual capacity.

26.     Defendant PrimeCare Medical, Inc. is a Pennsylvania corporation with a principal place of business located at 3940 Locust Lane, Harrisburg, Pennsylvania, 17109.

27.     Defendant PrimeCare Medical, Inc. (hereinafter "PrimeCare") is a Pennsylvania corporation with a principal place of business located at 3940 Locust Lane, Harrisburg, Pennsylvania, 17109.

28.     Defendant PrimeCare Medical of West Virginia, Inc. is a corporation with a principal place of business located at 3940 Locust Lane, Harrisburg, Pennsylvania, 17109. PrimeCare Medical of West Virginia has a local office address of 405 Capitol Street, Charleston, West Virginia 25301.

29.     PrimeCare Medical, Inc. is the parent company of PrimeCare Medical of West Virginia, Inc., and both are referred to throughout the Complaint as ("PrimeCare").

30.     Defendant PrimeCare Medical of West Virginia, Inc. is subject to bankruptcy proceedings in the case style *In Re: PrimeCare Medical of West Virginia, Inc*.; Case No. 24-600001 in the United States Bankruptcy Court for the Southern District of West Virginia.

31.     An Agreed Order Granting Motion of West Virginia Litigation Claimants for Relief from the Automatic Stay was filed on May 3, 2024, in *In Re: PrimeCare Medical of West Virginia, Inc.*; Case No. 24-600001, which specifically granted relief for this Plaintiff to lift the automatic stay imposed by 11 U.S.C. § 362 to proceed with his litigation claim, in order to seek recovery from one or more applicable liability insurance policies. See, Exhibit 1.

32.     Defendant PrimeCare was responsible for providing medical care to inmates in Southern Regional Jail (hereinafter "SRJ") including Adam Suratt.

33.     Defendant PrimeCare is liable for acts of its agents and employees.

34.     PrimeCare Medical of West Virginia, Inc. entered into a contract with the State of West Virginia in which agreed, among other things, to purchase and maintain liability insurance policies applicable to its operations in SRJ.  As noted above, however, PrimeCare Medical Inc. purchased insurance on behalf of PrimeCare Medical of West Virginia, Inc.

35.     Defendants John/Jane Doe Employees of WVDCR are yet to be identified who worked at SRJ on or about May 28, 2022.

36.     All Defendants, with the exception of PrimeCare, are sued up to the limits of the insurance policy(s) that provides liability coverage for their actions and omissions, or as otherwise permitted by law.

### III.     INTRODUCTION

40. Adam Suratt became incarcerated at Southern Regional Jail (hereinafter "SRJ") on February 23, 2022, and was found unresponsive in his cell on May 28, 2022, having overdosed on

an illegal substance that was brought into the Defendant's facility, in whole or in part, because of the wrongdoing of Defendants, and in violation of WVDCR's contraband policies.

41. Adam Suratt was taken by ambulance from SRJ to Beckley Appalachian Regional Hospital where he was pronounced dead at 8:55 pm.

42. Adam Suratt was not ordered or dispensed illegal substances as part of his medical care while incarcerated at SRJ.

43. Adam Suratt could have only ingested an illegal substance if it was brought into SRJ, as the result of the deliberate indifference of Defendants.

44. For an extended period of time prior to May 28, 2022, the Defendants knew and/or should have known that illegal substances had been brought into their facility by inmates, corrections staff, food/medical vendors, and/or others, and there was a serious risk of substantial harm to Adam Suratt because of the use of illegal substances, and Defendants did nothing to prevent Adam Suratt from ingesting illegal substances while in WVDCR custody.

45. At all times relevant herein, the bringing of illegal substances and contraband into Defendant's facilities were at epidemic levels because of the chronic understaffing of Defendant's facilities and lack of control over the screening process of persons entering Defendant's facilities and failure to enforce its own contraband policies.

46. The understaffing of Defendant's facilities has created an environment where even minimum standards for correctional facilities cannot be met and, in 2022, the Governor of West Virginia declared a state of emergency because the staffing shortages at the Defendant's facilities were creating conditions that violated the constitutional rights of persons incarcerated therein, and created an environment where injury and death to incarcerated persons increased because of said understaffing.

## IV.   <u>STATEMENT OF FACTS</u>

47. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

48. At all times relevant hereto, Adam Suratt was incarcerated at SRJ and in the custody and care of the WVDCR.

49. On February 23, 2022, Adam Suratt was booked at SRJ.

50. Upon information and belief, Mr. Suratt's medical intake screening was completed by Defendant PrimeCare's employee, Christin England, LPN, on February 24, 2022, at approximately 0213 hours. Mr. Suratt stated he had a past medical history of drug and alcohol abuse, depression, anxiety, and GERD.

51. Upon information and belief, Mr. Suratt was ordered medication pursuant to Defendant PrimeCare's detox protocol and Mr. Suratt was to be monitored during his incarceration for detox.

52. At approximately 15:15 hours on May 28, 2022, CO Reichard was in medical when Alpha Tower CO Allen requested medical via radio for a possible unresponsive inmate.

53. When CO Reichard arrived, Adam Surratt was found in A-4-5 unresponsive, blue, and with no pulse.

54. Upon information and belief CO Reichard found Adam Suratt and "placed Adam Suratt on the floor" and informed Sergeant Ford that medical was needed immediately.

55.  Sergeant Ford began lifesaving measures while CO Reichard left to retrieve a camera.

56. During this time, LPN Ashley Stroup and LPN Megan Holland arrived in the cell.

57. Upon arrival, nursing staff observed a white powdery substance was at the feet of Adam Suratt.

58. LPN Stroup placed AED pads on Adam Suratt and a shock was not advised. CPR was continued while Nurse Stroup administered a total of 8mg of Narcan and glucagon.

59. LPN Megan Holland placed an Ambu bag and mask on Adam Suratt to give breaths during CPR.

60. Plaintiff Adam Suratt's O2 Sat never went above 80% and Mr. Suratt's teeth were clenched, making suction unable to be performed.

61. CO Walker took over compressions until EMS arrived at approximately 15:30 hours at the cell.

62. EMS applied a Lucus CPR machine and nasal airway to Adam Suratt.

63. EMS left the facility at approximately 15:47 hours with Adam Suratt and CO Mills.

64. At approximately 15:55 hours, EMS arrived at Beckley Appalachian Regional Hospital.

65. At approximately 16:00 hours, Adam Suratt was pronounced deceased by Dr. Nanda.

66. Adam Suratt could have only ingested an illegal substance if it were brought into SRJ, in violation of WVDCR's contraband policies, as a result of the deliberate indifference of Defendants.

67. At the time of his injury, Adam Suratt was housed in A-Pod, Section 4, Cell 5 at SRJ and was under the care of WVDCR and SRJ.

68. The state of emergency declared by the Governor has been widely reported in the news media and West Virginia Division of Corrections and Rehabilitation Former Commissioner, Brad Douglas, told a legislative committee in 2023, "There are 1,027 vacancies, which is 33% vacancy rate for officers and a 27% vacancy rate overall. That number, as you can see there on your chart, it's slowly getting worse."

69. Defendants violated WVDCR Policy Directive 308.00 Contraband Control & Preservation of Physical Evidence by failing to ensure appropriate security practices, including designation of secure areas, evidencing an ongoing system designed to detect contraband, preventing its introduction and removing it when found.

70. As a result of the Defendants' deliberate indifference and violation of their own policies and procedures, Adam Suratt passed away at SRJ on May 28, 2022, because Defendants failed to protect Adam Suratt.

## V.   <u>APPLICABLE LEGAL STANDARDS</u>

71.   Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the above paragraphs of the Complaint.

72.   Defendants have a duty to inmates to provide adequate and appropriate safety measures and medical care to ensure that those persons to whom they assign this duty are appropriately providing care to incarcerated persons, and they breached this duty to Adam Suratt.

73.   The Defendants failed to oversee the actions/inactions of their employees, representatives and agents resulting in deliberately indifferent conduct occurring that affected Adam Suratt, placement within the jail and treatment and provision for safety during his incarceration, including permitting Adam Suratt to have access to illegal substances.

74.   All Defendants, as detailed throughout this Complaint and in the above and below factual descriptions and causes of actions, either directly caused damages and Adam Suratt's death through their negligent, deliberately indifferent and/or reckless actions/inactions, failed to adequately take steps to care for Adam Suratt or are vicariously and strictly liable for the same for the reasons stated throughout this Complaint.

75.     As is detailed herein below, Defendants are not entitled to qualified immunity under §1983 because (1) they violated a federal or constitutional right of Adam Suratt and (2) the unlawfulness of their conduct as it pertained to Adam Suratt was clearly established at the time of his injuries. *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

76.     As is detailed herein, under the Fourteenth Amendment to the U.S. Constitution, there is clear evidence that there was deliberate indifference to the serious medical needs of Adam Suratt by Defendants.

77.     As is detailed herein below, Adam Suratt clearly establishes a due process violation for deliberate indifference to the serious medical needs of Adam Suratt as it is legally inferred that the Defendants failed to respond to Adam Suratt's known medical needs. *Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990).

## COUNT I- DELIBERATE INDIFFERENCE UNDER 42 U.S.C. § 1983, *et seq.*

78.     Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the above paragraphs of the Complaint.

79.     The conduct of Defendants in permitting persons to bring illegal substances into the SRJ is a violation of standards applicable to correctional facilities and was a proximate cause and/or contributing factor to the injuries suffered by Adam Suratt, resulting in his death.

80.     This conduct by Defendants showed deliberate indifference to the medical needs of Adam Suratt and the unlawfulness of this conduct by Defendants was sufficiently clear so that every reasonable public official in their position would understand that what they were doing was unlawful.

## COUNT II - VIOLATIONS OF THE WEST VIRGINIA STATE AND U.S. CONSTITUTIONS

81.     Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the above paragraphs of the Complaint.

82.     The actions of Defendants violated the constitutional rights guaranteed to Adam Suratt under the Fourteenth Amendment to the U.S. Constitution and Article III, Sections l, 5, 10 and 14 and Article XII, Section 1 of the West Virginia Constitution.

83.     With respect to Defendants, Plaintiff specifically only seeks recovery up to the limits of the applicable insurance policies.

## COUNT III - NEGLIGENCE AND VIOLATIONS OF CONSTITUTIONAL RIGHTS

84.     Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the above paragraphs of the Complaint.

85.     The actions and/or inactions of the Defendants as described herein above constitute negligence and/or violations of Adam Suratt's Constitutional rights and subjects them to liability to Adam Suratt under West Virginia and Federal Law, as stated herein above. Specifically, Defendants violated Adam Suratt's constitutional rights through their unlawful and deliberately indifferent conduct as set forth herein above.

## COUNT IV- PROFESSIONAL MEDICAL NEGLIGENCE

86. Plaintiff incorporates herein by reference all preceding paragraphs of the Complaint as if set forth fully herein verbatim.

87. PrimeCare, through its agents and employees, owed Mr. Suratt a duty of care under West Virginia's Medical Professional Liability Act ("MPLA"), West Virginia Code § 55-7B-1, et seq. as the applicable health care provider for Plaintiff.

88. PrimeCare contracted with the State of West Virginia to provide inmates like Mr. Suratt with constitutionally adequate healthcare which meets the applicable standard of care.

89. PrimeCare owed a duty of care to Mr. Suratt to properly evaluate his condition and provide him with care which met the standard of care.

90. PrimeCare and its employees and agents herein deviated from the standard of care as set more fully herein, resulting in deliberate indifference to the serious medical needs of Mr. Suratt.

91. PrimeCare and its employees and agents deviated from the standard of care by failing to enforce NCCHC standards and its own policies and procedures, which resulted in Mr. Suratt's death.

92. PrimeCare, through its agents and employees, knew or should have known that deviating from the appropriate standard of care, as described hereinabove, could result in serious injury or death to their patients, including Mr. Suratt.

93. Defendants' failure to follow the accepted standard of care deprived Mr. Suratt of a chance of recovery and increased his risk of harm, which was a substantial factor in bringing about his pain, suffering, and untimely death.

94. As a direct and proximate result of the Defendants' negligent, careless and reckless conduct, Mr. Suratt suffered severe bodily injury, conscious pain and suffering, and an untimely death.  Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia wrongful death statute, W. Va. Code § 55-7-6.

95. The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Mr. Suratt, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

96. By their actions and inactions set forth herein, Defendants failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider acting in the same or similar circumstances.

97. PrimeCare is vicariously liable for the actions and omissions of its employees committed within the scope of their employment.

## <u>COUNT V - NEGLIGENT HIRING</u>

98. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

99. At all times relevant hereto, Defendants owed inmates at SRJ, including Adam Suratt, a duty to not hire employees and place them in position of power and authority where they can cause serious harm or injuries to others.

100. Upon information and belief, Defendants did not conduct a reasonable investigation into the background of their Employee Defendants and did not adequately assess the possible risk of serious harm or injury to third-parties that could result from the conduct of their Employee Defendants if they were employed at SRJ.

101. Upon information and belief, Defendants' employees had a history of prior grossly negligent acts and misconduct, including but not limited to, neglect, cruel and unusual punishment and the unnecessary and wanton infliction of pain; and deliberate indifferent to, and willfully ignoring, the health, safety, and serious medical needs of inmates.

102. Upon information and belief, had the Defendants conducted a reasonable investigation into the background of their Employee Defendants, they would have discovered that their Employee Defendants had a history of grossly negligent acts and misconduct.

103. Upon information and belief, had the Defendants conducted a reasonable investigation into the background of their Employee Defendants, their grossly negligent acts described herein could have been prevented.

104. Defendants violated clearly established rights and/or laws with respect to the hiring of its Employee Defendants, evidencing a deliberate indifference to Adam Suratt's rights.

105. As a direct and proximate result of the Defendants' grossly negligent conduct, Adam Suratt suffered severe bodily injury, conscious pain and suffering, and an untimely death. Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia survival and wrongful death statutes, W. Va. Code §§ 55-7-5 and 55-7-6.

106. The actions of the Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Adam Suratt.

107. The Defendants' reprehensible, willful and wanton, malicious conduct and blatant disregard for the rights owed to Adam Suratt justify an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

## COUNT VI- NEGLIGENT SUPERVISION AND TRAINING

108. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

109. At all times relevant hereto, Defendants owed inmates at SRJ, including Adam Suratt, a duty of care.

110.    Defendants owed inmates at SRJ, including Adam Suratt, a duty to supervise and train their employees, especially those in positions of power and authority, to prevent them from acting in a grossly negligently manner and causing serious harm or injuries to others properly and adequately.

111.    Upon information and belief, the Defendants' employees were not properly or adequately supervised at SRJ.

112.    Upon information and belief, the Defendants' employees were not properly or adequately trained at SRJ.

113.    Upon information and belief, the Defendants' grossly negligent supervision and training of their Employee Defendants allowed them to freely commit the grossly negligent and reckless acts described herein.

114.    Upon information and belief, had the Defendants properly and adequately supervised and trained their Employee Defendants, their grossly negligent and reckless acts described herein could have been prevented.

115.    The Defendants violated clearly established rights and/or laws with respect to the supervision and training of its Employee Defendants, inter alia, W. Va. Code § 15A-3-4(a)(4), W. Va. Code § 15A-3-5, and WVDCR Regulations.

116.    As a direct and proximate result of the Defendants' grossly negligent and reckless conduct, Adam Suratt suffered severe bodily injury, conscious pain and suffering, and an untimely death.  Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia wrongful death statute, W. Va. Code §§ 55-7-6.

117.    The actions of the Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Adam Suratt, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

## COUNT VII - NEGLIGENT RETENTION

118.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

119.    At all times relevant hereto, the Defendants owed inmates at SRJ, including Adam Suratt, a duty of care.

120.    The Defendants owed inmates at SRJ, including Adam Suratt, a duty to not negligently retain unfit employees, especially those in position of power and authority, who have engaged in grossly negligent, reckless, or otherwise wrongful conduct.

121.    Upon information and belief, the Defendants' employees had a history of prior grossly negligent, reckless acts and misconduct, including but not limited to, neglect, cruel and unusual punishment and the unnecessary and wanton infliction of pain; and deliberate indifferent to, and willfully ignoring, the health, safety, and serious medical needs of inmates.

122.    Despite these aforementioned grossly negligent and reckless acts, as described herein, the Defendants' employees were retained.

123.    Upon information and belief, the Defendants knew or should have known that their Employee Defendants were unfit, but retained them anyway.

124.    Upon information and belief, the Defendants could have reasonably foreseen the possible risk of harm or injury to others that could result from the conduct of their unfit Employee Defendants.

125.     Upon information and belief, had the Defendants not negligently retained their Employee Defendants, their grossly negligent and reckless acts described herein could have been prevented.

126.     The Defendants violated clearly established rights and/or laws with respect to the retention of its Employee Defendants, inter alia, W. Va. Code § 15A-3-5 and WVDCR Regulations.

127.     As a direct and proximate result of the Defendants' grossly negligent and reckless conduct, Adam Suratt suffered severe bodily injury, conscious pain and suffering, and an untimely death.  Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia survival and wrongful death statutes, W. Va. Code §§ 55-7-5 and 55-7-6.

128.     The actions of the WVDCR were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Adam Suratt, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

## COUNT VIII – FOURTEENTH AMENDMENT VIOLATIONS UNDER 42 U.S.C. § 1983

129.     Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

130.     Defendants, while acting under color of law and within the scope of their employment, violated the Fourteenth Amendment right of pretrial detainees to be free of punishment without due process.

131.     The actions of Defendants, described hereinabove, violated the constitutional rights guaranteed to Adam Suratt, under the Fourteenth Amendment to the United States Constitution by depriving him of basic human necessities, constituting punishment without due process.

18

132.    Defendants imposed and/or permitted these conditions despite said conditions not being reasonably related to any legitimate non-punitive governmental or penological objective.

133.    Defendants were deliberately indifferent to the health, safety, and other basic needs of the Plaintiff, as described hereinabove, by having actual knowledge of such conditions and deliberately taking no action to remedy them in a timely or appropriate manner.

134.    Defendant supervisors likewise exhibited supervisory indifference or tacit authorization of the misconduct of subordinates and the constitutional injuries committed by said subordinates.

135.    Defendant supervisors had actual or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury and the Defendant supervisors' response to said knowledge was so inadequate as to show deliberate indifference or tacit authorization of these constitutional injuries.

136.    The actions of Defendants, described hereinabove, were not taken in good-faith, were objectively unreasonable, and were in violation of clearly established law.

137.    During the time period at issue, it was clearly established that the serious deprivations of basic human needs at SRJ, as described hereinabove, violated the Fourteenth Amendment to the United States Constitution.

138.    The actions of Defendants, described hereinabove, deliberately injured Adam Suratt in a way unjustified by any governmental interest.

139.    The actions of Defendants, described hereinabove, shock the conscience.

140.    The actions of Defendants, described hereinabove, were unlawful and unjustified.

141.    As a direct and proximate result of Defendants' unlawful, unjustified, and unconstitutional actions, Adam Suratt suffered a deprivation of his Constitutional rights and

physical harm, and will seek compensatory and nominal damages for, inter alia, physical pain and discomfort; the physical effects of delayed medical treatment resulting in his death, and illegal substances being smuggled into the jail where Adam Suratt was housed, resulting in his death.

142. In addition to these compensatory damages, the Plaintiff will also seek to recover, under 42 U.S.C. § 1988, attorneys' fees and cost incurred during the course of this litigation.

143. The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Adam Suratt, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

## COUNT IX - FOURTEENTH AMENDMENT VIOLATIONS UNDER 42 U.S.C. § 1983
### (Deliberate Indifference To Serious Medical Needs)

144. The Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

145. Defendants, while acting under color of law and within the scope of their employment, violated the Fourteenth Amendment right of pretrial detainees to be free of punishment without due process.

146. The actions of Defendants, described hereinabove, violated the constitutional rights guaranteed to Adam Suratt, and all similarly situated inmates and former inmates, under the Fourteenth Amendment to the United States Constitution by acting with deliberate indifference to the serious medical needs of inmates.

147. As described hereinabove, Defendants routinely failed to promptly provide necessary and reasonable medical treatment to Adam Suratt.

148. Defendants were deliberately indifferent to, and willfully ignored, the serious medical needs of Adam Suratt, as described hereinabove, by failing to establish, monitor, and/or

enforce policy directives and operational procedures to ensure that inmates at SRJ receive prompt and reasonable treatment for their medical needs.

149.    Defendant supervisors likewise exhibited supervisory indifference or tacit authorization of the misconduct of subordinates and the constitutional injuries committed by said subordinates.

150.    Defendant supervisors had actual or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury and the Defendant supervisors' response to said knowledge was so inadequate as to show deliberate indifference or tacit authorization of these constitutional injuries.

151.    The actions of Defendants, described hereinabove, were not taken in good-faith, were objectively unreasonable, and were in violation of clearly established law.

152.    During the time period at issue, it was clearly established that failing to promptly provide necessary and reasonable medical treatment to inmates at SRJ, as described hereinabove, violated the Fourteenth Amendment to the United States Constitution.

153.    The actions of Defendants, described hereinabove, deliberately injured the Plaintiff in a way unjustified by any governmental interest.

154.    The actions of Defendants, described hereinabove, shock the conscience.

155.    The actions of Defendants, described hereinabove, were unlawful and unjustified.

156.    As a direct and proximate result of Defendants' unlawful, unjustified, and unconstitutional actions, Adam Suratt suffered a deprivation of his Constitutional rights and physical harm, and will seek compensatory and nominal damages for, inter alia, physical pain and discomfort; the physical effects of delayed medical treatment resulting in his death, and illegal substances being smuggled into the jail where Adam Suratt was housed, resulting in his death.

157.    In addition to these compensatory damages, the Plaintiff will also seek to recover, under 42 U.S.C. § 1988, attorneys' fees and cost incurred during the course of this litigation.

158.    The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Adam Suratt, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

## WAIVER OF GOVERNMENTAL IMMUNITY AND PUNITIVE DAMAGES

159.    Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the above paragraphs of the Complaint.

160.    The conduct of Defendants and John/Jane Doe Defendants, described herein above, including their flagrant disregard of Adam Suratt's medical needs, was willful, wanton, reckless, fraudulent, oppressive, and outrageous under any definition of those terms.

161.    Under common law, the case of *Parkulo v. West Virginia Board of Probation and Parole and the West Virginia Division of Corrections*, 199 W.Va. 161, 483 S.E.2d 507 (1997), Syllabus Point 8, there is no immunity for an executive official whose acts are fraudulent, malicious, or otherwise oppressive. In this matter, the Defendants and John/Jane Doe Defendants' conduct has been fraudulent, malicious and/or oppressive.

162.    As to Defendants and John/Jane Doe Defendants, there is no immunity, cap on damages, or other tort damage limitation applicable to Plaintiff's claims, including, but not limited to, punitive damages and all other forms of damages available to Plaintiff against any non-governmental entity.

**WHEREFORE**, Plaintiff, individually and on behalf of the Estate of Adam Lee Suratt, requests that the Court:

a)  Award all compensatory damages allowed by law;

b)  Award punitive damages, where applicable;

c)  Award attorney's fees and costs incurred during the course of this litigation,

pursuant to 42 U.S.C. § 1988;

d)  Grant any and all relief Plaintiff may be entitled to in law or equity; and

e)  Any further relief this Honorable Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

**DOUGLAS HAGER on behalf of
the ESTATE OF ADAM LEE SURATT**

**By Counsel**

*/s/ Stephen P. New*
Stephen P. New (WVSB No. 7756)
Emilee B. Wooldridge (WVSB No. 14310)
Stephen New & Associates
430 Harper Park Drive
Beckley, West Virginia 25801
Ph: (304) 250-6017
Fax: (304) 250-6012
steve@newlawoffice.com
emilee@newlawoffice.com

Timothy Lupardus (WVSB No. 6252)
The Lupardus Law Office
275 Bearhole Road
Pineville, West Virginia 24874
(304) 732-0250
office@luparduslaw.com

Zachary Whitten (WVSB No. 13709)
The Whitten Law Office
P.O. Box 753
Pineville, West Virginia 24874
zwhittenlaw@gmail.com

Robert Dunlap (WVSB No. 10012) Robert
Dunlap & Associates
208 Main Street
Beckley, West Virginia 25801
(304) 255-4762

23

robertdunlapesq@gmail.com