# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# AT BECKLEY

DOUGLAS HAGER,
*on behalf of the Estate of*
ADAM LEE SURATT,

        Plaintiff,

v.                                      CIVIL ACTION NO. 5:24-cv-00258

BETSY JIVIDEN, *individually as a*
*Former Employee of the West Virginia Division*
*of Corrections and Rehabilitation*,
MICHAEL FRANCIS, *individually as a*
*Former Employee of the West Virginia Division*
*of Corrections and Rehabilitation*,
PRIMECARE MEDICAL, INC.,
PRIMECARE MEDICAL OF WEST VIRGINIA, INC.,
JOHN/JANE DOE PRIMECARE MEDICAL,
INC. EMPLOYEES,
JOHN/JANE DOE PRIMECARE MEDICAL
OF WEST VIRGINIA INC. EMPLOYEES, and
JOHN/JANE DOE WVDOCR EMPLOYEES,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending are Motions to Dismiss filed by Defendant Michael Francis [ECF 53], on November 8, 2024, Defendant Betsy Jividen [ECF 55], on November 15, 2024, and Defendants Tiffany Ford, Nathan Pack, Nathaniel Reichard, and Christopher Walker ("Officer Defendants") [ECF 57], on November 15, 2024. Plaintiff Douglas Hager responded in opposition to each Motion [ECF 59, 63, 67], to which Defendants replied. [ECF 66, 68, 73]. Also pending is the Officer Defendants' Motion to Stay Discovery [ECF 78], filed December 31, 2024. The matters are ready

for adjudication.

### I.

This action arises from an inmate's alleged overdose at Southern Regional Jail ("SRJ"). On February 23, 2022, Adam Lee Suratt ("Mr. Suratt") was booked at SRJ. A PrimeCare[1] employee completed Mr. Suratt's medical intake screening the next day. [ECF 51 at ¶¶ 73–74]. Mr. Suratt reported a history of drug and alcohol abuse, depression, anxiety, and gastroesophageal reflux disease. [*Id.* at ¶ 74]. He was prescribed medication under PrimeCare's detox protocol. [*Id.* at ¶ 75]. Mr. Suratt completed the detox process on March 8, 2022. [*Id.* at ¶ 54]. His chart indicated, however, that certain daily detox checks were preempted or cancelled due to "time constraints," "no officer/security available," or simply an inability "to be completed." [*Id.* at ¶ 58].

In mid-March, Mr. Suratt began antidepressant therapy. [*Id.* at ¶ 56]. On May 25, 2022, he reported to PrimeCare (1) a difficulty with his medication, (2) the need for an increased dosage, and (3) "endorsed passive suicidal ideation." [*Id.* at ¶ 63]. No action was taken. [*Id.* at ¶ 64].

On May 28, 2022, Mr. Suratt was found unresponsive in his cell at approximately 3:15 p.m. [*Id.* at ¶¶ 76–77]. Officer Reichard informed Sergeant Ford that medical intervention was needed. [*Id.* at ¶ 78]. Sergeant Ford started lifesaving measures after arriving. [*Id.* at ¶ 79]. Nurses Ashley Stroup and Megan Holland then arrived at the cell. [*Id.* at ¶ 80]. They observed a white powdery substance at Mr. Suratt's feet and administered Narcan and Glucagon. [*Id.* at ¶¶ 81–82]. Officer Walker took over compressions until emergency personnel arrived. [*Id.* at ¶ 85].

---

[1] References to "PrimeCare" include both Defendants PrimeCare Medical, Inc. and PrimeCare Medical of West Virginia, Inc.

Mr. Suratt was pronounced dead at approximately 4:00 p.m. at Beckley Appalachian Regional Hospital. [*Id.* at ¶ 89]. A drug overdose was the apparent cause. [*Id.* at ¶ 45].

On May 23, 2024, estate representative Donald Hager instituted this action. He alleged an Eighth Amendment violation and supplemental negligence claims. [ECF 1]. On November 1, 2024, Mr. Hager filed the operative, Second Amended Complaint ("Complaint") asserting five claims against the moving Defendants. [ECF 51]. Count I asserts Eighth Amendment claims for deliberate indifference to serious medical and safety needs, pursuant to 42 U.S.C. § 1983. [*Id.* at ¶¶ 104–19]. Count II and Counts IV through VI allege, respectively, gross negligence, negligent hiring, negligent supervision and training, and negligent retention. [*Id.* at ¶¶ 120–23, 140–70].

Officer Defendants were voluntarily dismissed on March 10, 2025. [ECF 125].[2] Defendant Paula Dillman McGowan was voluntarily dismissed on March 28, 2025. [ECF 131]. Defendants Francis and Jividen now move to dismiss the Complaint pursuant to *Federal Rule of Civil Procedure* 12(b)(6).

## II.

*Federal Rule of Civil Procedure* 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

---

[2] Inasmuch as the Officer Defendants were voluntarily dismissed, the Motion to Dismiss [**ECF 57**] and Motion to Stay Discovery [**ECF 78**] are **DENIED AS MOOT**.

The required "short and plain statement" must provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted); *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions." *Twombly*, 550 U.S. at 555. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *McCleary-Evans*, 780 F.3d at 585; *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 122, 141 S. Ct. 1376 (2021); *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not "forecast evidence sufficient to prove the elements of [a] claim," but it must "allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 (4th Cir. 2012)) (internal quotation marks omitted). Stated another way, the operative pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Robertson*, 679 F.3d at 288.

The decision in *Iqbal* provides some additional markers concerning the plausibility requirement:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted

4

unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief. . . .'"

Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678–79 (citations omitted).

As noted in *Iqbal*, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a court to "accept as true all of the factual allegations contained in the complaint." *Erickson*, 551 U.S. at 94 (citing *Twombly*, 550 U.S. at 555–56); *see also S.C. Dep't of Health & Env't Control v. Com. & Indus. Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (citing *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)). The court is required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

### III.

#### A. Count I – Eighth Amendment Claim

Mr. Hager asserts two deliberate indifference claims against Defendants. First, he alleges Defendants were deliberately indifferent to the introduction of illegal substances into the correctional institution, thereby substantially increasing Mr. Suratt's overdose risks ("failure to

protect"). [ECF 51 at ¶ 105]. Second, he alleges Defendants Francis and Jividen were deliberately indifferent to Mr. Suratt's medical needs for failing to treat his addiction ("inadequate medical care"). [*Id.* at ¶ 106; ECF 59 at 12; ECF 63 at 10].

"The Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" *Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017) (quoting U.S. Const. amend. VIII); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This proscription accords inmates the right to receive adequate protection. *Helling v. McKinney*, 509 U.S. 25, 33–35 (1993); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *King v. Riley*, 76 F.4th 259, 264 (4th Cir. 2023). An Eighth Amendment claim is subject to the deliberate indifference standard, which encompasses an objective and subjective component. *Farmer*, 511 U.S. at 834; *King*, 76 F.4th at 264; *Kingsley*, 877 F.3d at 543 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The objective prong requires the inmate to demonstrate a 'substantial risk of serious harm.'" *King*, 76 F.4th at 264 (quoting *Farmer*, 511 U.S. at 834); *see also Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). The subjective prong requires the prison official to "actually know of and disregard an objectively serious condition, medical need, or risk of harm." *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997); *see also Pfaller v. Amonette*, 55 F.4th 436, 445 (4th Cir. 2022); *Scinto*, 841 F.3d at 225.

### 1. Failure to Protect

Assuming the trafficking of illegal substances in a correctional environment constitutes a "substantial risk of serious harm," the Complaint falls short of alleging facts sufficient to plead both the objective and subjective components of deliberate indifference. As noted, the subjective component requires that *each* Defendant actually knew the risk of harm. *Short v.*

*Hartman*, 87 F.4th 593, 612 (4th Cir. 2023); *King*, 76 F.4th at 264. It is well-settled that "knowingly violating a prison policy does not amount to deliberate indifference." *King*, 76 F.4th at 267 (citing *Rich v. Bruce*, 129 F.3d 336, 339–40 (4th Cir. 1997)). The Complaint is exceptionally thin on the specifics supporting how Defendants knew Mr. Suratt faced a substantial risk of serious harm from illegal controlled substances entering SRJ. *See Langford v. Joyner*, 62 F.4th 122, 125 (4th Cir. 2023). The Court has collected them as follows:

> 68. *For an extended period of time* prior to May 28, 2022, the Defendants knew and/*or should have known* that *illegal substances* had been brought into their facility by *inmates*, *corrections staff*, *food/medical vendors*, *and/or others*, and there was a serious risk of substantial harm to Adam Suratt because of the use of illegal substances, and Defendants *did nothing to prevent Adam Suratt from ingesting illegal substances while in WVDCR custody*.
>
> 69. At all times relevant herein, the bringing of illegal substances and contraband into Defendants facilities *were at epidemic levels* because of the *chronic understaffing* of Defendants facilities and lack of control over the screening process of persons entering Defendants facilities and failure to enforce its own contraband policies.
>
> . . . .
>
> 96. As a direct and proximate result of Defendants' failure to protect Adam Suratt from his drug addiction, provide adequate medical care, and/or failure to prevent his access to contraband, Adam Suratt passed away at SRJ on May 28, 2022.
>
> . . . .
>
> 99. The Defendants failed to oversee the actions/inactions of their employees, representatives and agents resulting in deliberately indifferent conduct occurring that affected Adam Suratt, placement within the jail and treatment and provision for safety during his incarceration, including permitting Adam Suratt to have access to illegal substances and failure to properly monitor his passive suicidal ideation.
>
> . . . .
>
> 108. Defendants were deliberately indifferent to the health, safety, and other basic needs of the Plaintiff, as described hereinabove, by having actual knowledge of such conditions and deliberately taking no action to remedy them in a timely, reasonable, or appropriate manner.

. . . .

> 110. Defendant supervisors had actual or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury and the Defendant supervisors' response to said knowledge was so inadequate as to show deliberate indifference or tacit authorization of these constitutional injuries.
>
> . . . .
>
> 132. PrimeCare Defendants knew that Mr. Suratt was an individual who at the beginning of his incarceration, suffered from withdrawal and had to be placed on the detox protocol. PrimeCare Defendants became aware of his depression and anxiety and requests for an increase in medication, as well as Mr. Suratt expressing his expected length of stay for a parole date at the end of December, approximately eight months later.

[ECF 51 at ¶¶ 68–69, 96–99, 108, 110, 132 (emphasis added)].

The most substantive of the foregoing allegations are paragraphs 68 and 69. The emphasized portions of those allegations, however, raise many more questions than they answer. First, does an "extended period of time" mean days, weeks, months, or years? That is no small matter. A failure over a period of weeks is quite different -- from an Eighth Amendment inferential standpoint -- from one occurring over a period of many months or years. Second, what "illegal substances" were in the facility and in what quantities? These unanswered questions, too, are quite critical. Tobacco and alcohol are both illegal substances in a correctional environment. But if those substances came into the facility in high quantities, but methamphetamine, for instance, did not, the linkage between Mr. Suratt's tragic death and jail practices are remote at best. One must remember as well that Mr. Hager leaves entirely unanswered the critical question of what substance caused Mr. Suratt's demise. Third, with respect to those importing the substances into the facility, not a single "inmate, corrections staff, [or] food/medical vendor" is mentioned by name, much less the unspecified "others" who were involved. Likewise, the term "epidemic levels" leaves one grasping for substance.

8

At this stage of the case, Plaintiff's allegations are treated as entirely truthful. The conclusory, undefined, and, frankly, careless allegations here, however, are the precise type condemned by *Twombly* and its progeny. In the end, they lack, at a minimum, the sufficiently focused and detailed markers disclosing the knowledge of the unspecified "Defendants" respecting the illicit trafficking of illegal controlled substances at SRJ. Again, there is no mention of quantities, substance types, prevalence or the other precursors that might provide circumstantial knowledge of the danger to Mr. Suratt.

The conclusory nature of the factual allegations thus impairs Plaintiff's attempt to muster a plausible Eighth Amendment failure-to-protect claim. The Complaint fails to plausibly allege either a substantial risk of serious harm or that the Defendants actually knew of and disregarded any objectively serious risk of harm.

### 2. Inadequate Medical Care

Inasmuch as it arises under the Eighth Amendment rubric earlier referenced, "[a] successful medical deliberate indifference claim has two components, objective and subjective." *Phoenix v. Amonette*, 95 F.4th 852, 859 (4th Cir. 2024) (internal quotation marks and citations omitted); *see also Short*, 87 F.4th at 612. The objective component requires a serious medical condition, namely, one formally diagnosed and mandating treatment or, alternatively, one so obvious even a lay person would readily recognize the need for medical intervention. *Phoenix*, 95 F.4th at 859 (cleaned up); *see also Scinto*, 841 F.3d at 225. "The subjective component requires showing that the defendant had actual subjective knowledge of both the [plaintiff's] serious medical condition and the excessive risk posed by the official's action or inaction." *Phoenix*, 95 F.4th at 859 (cleaned up); *see also Langford*, 62 F.4th at 125 (stating a plaintiff must "plead

9

sufficient facts to plausibly allege that each Defendant actually knew about his serious medical condition and the risks of failing to treat him").

Our Court of Appeals has concluded the treatment rendered must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hixon v. Moran*, 1 F.4th 297, 303 (4th Cir. 2021) (quoting *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. 825 (1994)). Mere negligence or malpractice is insufficient. *See id.* (citing *Farmer*, 511 U.S. at 835).

Three things are certain from the Complaint. First, Mr. Suratt was an addict. [ECF 51 at ¶¶ 74–75]. Second, he "was ordered [and received] medication pursuant to . . . detox protocol and . . . was to be monitored during his incarceration for detox." [*Id.* at ¶ 51]. Third, he received the detox protocol medications for approximately two weeks and completed the protocol. [*Id.* at ¶¶ 52, 54]. Taking these allegations as true, the facility's protocols surfaced the need for treatment, the treatment was administered, and the detoxification protocol was completed.

The allegations regarding treatment failures thereafter -- be they for addiction treatment or monitoring his passive suicidal ideations -- suggest no more than negligence on the part of facility staff. More importantly, there are no allegations that either Defendants Francis or Jividen knew about (1) any treatment failures, (2) the risks accompanying treatment failures, or (3) that Mr. Suratt's treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Hixon*, 1 F.4th at 303. Indeed, the Complaint suggests otherwise by pleading Mr. Suratt received addiction flagging at intake and successful treatment thereafter. [ECF 51 at ¶¶ 46–63, 74–75].

The remaining pleading deficiencies need not be addressed. In sum, this branch of the Eighth Amendment claim fails to provide "fair notice" of the particular unconstitutional acts

the moving Defendants committed. *See Langford*, 62 F.4th at 125. The allegations must "permit the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

The allegations against Defendants Francis and Jividen are precisely "the type of 'unadorned, the-defendant-unlawfully-harmed-me accusation[s]' and 'legal conclusions' that are insufficient to survive a Rule 12(b)(6) motion to dismiss." *See id.* at 678.

Accordingly, the Court **GRANTS** the Motions to Dismiss, with Count I **DISMISSED** as to Defendants Francis and Jividen, without prejudice to repleading in accordance with the *Federal Rules of Civil Procedure*.

### B. *State Law Negligence Claims*

Defendants Francis and Jividen seek dismissal of Mr. Hager's claim for gross negligence (Count II) based on (1) insufficiency, and (2) qualified immunity. Defendants Francis and Jividen also seek dismissal of the (1) negligent hiring (Count IV), (2) negligent supervision and training (Count V), and (3) negligent retention (Count VI) claims on the same grounds.

Under West Virginia law, a public officer acting within the scope of employment is immune from suit for actions taken in any discretionary function. *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 505, 766 S.E.2d 751, 764 (2014). West Virginia treats the general functions of state correctional officers and administrators, along with the broader duties of employee training, supervision, and retention, as discretionary *Id.* at 509, 766 S.E.2d at 768 ("[W]e find that D.H.'s general functions as a correctional officer, like most law enforcement officers, are broadly characterized as discretionary, requiring the use of his discretionary judgments and decisions."). However, immunity does not attach to discretionary actions or omissions if made "in violation of a clearly established statutory or constitutional rights or laws of which a reasonable

11

person would have known, or [which] are otherwise fraudulent, malicious, or oppressive." *Id.* at 507, 766 S.E.2d at 766.

In its recent decision in *West Virginia Dep't of Hum. Servs. v. David B., Next Friend of J.B.*, the Supreme Court of Appeals summarized the governing standards for the state variety of qualified immunity:

> West Virginia applies two standards to determine if a state agency, agent, official, or employee is protected by qualified immunity. First, "[a] litigant may pierce the shield of qualified immunity by showing that a government official has violated a clearly established statutory or constitutional right." Second, a litigant may pierce the shield of qualified immunity by showing that the government official's, employee's, or agent's acts or omissions were *fraudulent, malicious, or oppressive*. The first test is based upon federal law, while the second is in addition to the federal law-based test.

No. 23-275, 2024 WL 4784904, at *5 (W. Va. Nov. 14, 2024) (emphasis added) (cleaned up); *see also Maston v. Wagner*, 236 W. Va. 488, 781 S.E.2d 936, 940 (2015); Syl. Pt. 5, in part, *W. Va. Div. of Nat. Res. v. Dawson*, 242 W. Va. 176, 190, 832 S.E.2d 102, 116 (2019); Syl., in part, *State v. Chase Sec., Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992).

In view of the pleading deficiencies earlier mentioned, Mr. Hager has not presently shown that particular Defendants violated a clearly established statutory or constitutional right. In any event, it appears the moving Defendants rely principally upon the second prong earlier quoted. The question is, thus, whether Mr. Hager has pled any acts or omissions by the subject Defendants that were fraudulent, malicious, or oppressive. He has utterly failed to do so. Defendants are thus entitled to qualified immunity for the acts and omissions related to Mr. Hager's negligence claims. *See W. Va. Dep't of Hum. Servs. v. A.R.*, 249 W. Va. 590, 601, 900 S.E.2d 16, 27 (2024) (finding that plaintiff's general allegation of defendant's failure to follow policies and protocols warranted dismissal for qualified immunity purposes inasmuch as it failed to show Defendant "did or failed to do something that it would have reasonably understood to be unlawful."). Inasmuch as qualified

immunity applies to the negligence claims, the Court need not address the sufficiency of the pleading as to those claims. The Court would note, however, the claims appear largely unsupported by necessary factual allegations.

The Court **GRANTS** the Motions to Dismiss, and Counts II, IV, V, and VI are **DISMISSED** as to Defendants Francis and Jividen, without prejudice to repleading in accordance with the *Federal Rules of Civil Procedure*.

### IV.

As noted, the operative pleading is the Second Amended Complaint. Thus, despite three tries, there remain fundamental pleading deficiencies. In the event Mr. Hager desires to pursue yet another pleading amendment, his counsel should devote closer scrutiny to the requirements of *Twombly* and its progeny. General allegations of wrongdoing, such as chronic jail understaffing and the illegal introduction of controlled substances into the correctional environment will not, standing alone, suffice. Factual pleading with some level of particularity, not just as to wrongdoing but also as to causation, is essential.

### V.

Based upon the foregoing discussion, the Court **GRANTS** the Motions to Dismiss **[ECF 53, 55]** and **DISMISSES** all claims with respect to Defendants Francis and Jividen. Mr. Hager, if he so desires, may replead in accordance with the *Federal Rules of Civil Procedure*.

The Clerk is **DIRECTED** to transmit copies of this written opinion and order to all counsel of record and any unrepresented parties.

ENTERED: April 1, 2025

Frank W. Volk
Chief United States District Judge

13